UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

M.B., individually and on behalf of her child M.,

                Plaintiff,

      -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                Defendant.
-------------------------------------------------------x

No. 14CV3455-LTS-JCF

## MEMORANDUM OPINION AND ORDER

Plaintiff M.B. ("M.B." or "Plaintiff"), individually and on behalf of her minor daughter M., brings the instant action against the New York City Department of Education ("DOE" or "Defendant") pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. Plaintiff has alleged that the DOE failed to offer M. a Free Appropriate Public Education ("FAPE") for the 2013-14 school year. In the instant motion, Plaintiff seeks permission to amend the administrative record in this case, upon which the Court will determine the parties' anticipated cross-motions for summary judgment, to include letters from two doctors who have treated M., as well a "forthcoming" affidavit from a third. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331. The Court has carefully considered the parties' submissions. For the reasons stated below, Plaintiff's motion to supplement the administrative record in this case is denied.

BACKGROUND

Plaintiff M.B. is the mother of minor student M., who is has been classified by the DOE as a student with an "Other Health Impairment." (Compl. ¶¶ 2, 13.) M.B. alleges that M. has a diagnosis of spastic cerebral palsy, that her processing speed falls in the extremely low range, her full scale IQ falls in the borderline range, she loses energy throughout the day and she uses a wheelchair and/or a walker to help her move around on school grounds. (Id. ¶¶ 14-15.)

Plaintiff asserts that, pursuant to the IDEA, the DOE – as a recipient of federal funding – is obligated to "take affirmative steps to identify, evaluate and provide free appropriate educational programs and services to all disabled children" such as M. (Id. ¶ 9.) Under the IDEA, school districts must formulate Individualized Education Programs ("IEP") for disabled children, which must include "special education and related services designed to meet the student's unique needs." (Id. ¶ 10.) A parent may challenge an IEP by initiating a hearing before an Impartial Hearing Officer ("IHO"), at which point the IHO must determine whether the district has offered the student a FAPE. (Id. ¶¶ 11-12.) If the IHO finds that a student has been denied a FAPE, he or she may direct the school district to fund that student's tuition at an appropriately specialized school. (See id. ¶ 21.) An IHO's decision may be appealed to a State Review Officer ("SRO"), and a party aggrieved by an SRO's determination may bring an action challenging that determination in a district court. (See id. ¶¶ 5, 23; see also 20 U.S.C. § 1415(I).)

M.B., concerned about the services being provided for M., commenced an impartial hearing process to challenge M.'s IEP on July 10, 2013. (Compl. ¶ 16.) The IHO issued a decision on October 30, 2013, which found that M. had been denied a FAPE for the

2013-14 school year.  (Compl. ¶¶ 20-21.)  In light of this finding, the IHO ordered that the DOE fund M.'s tuition at the Henry Viscardi School, a nonpublic institution, for the remainder of the 2013-14 school year.  (Id. ¶ 21.)  On December 17, 2013, the DOE requested review of the IHO's decision, and on February 12, 2014, the SRO issued its decision on the DOE's appeal.  (Id. ¶¶ 22-23.)  The SRO found that the IHO had exceeded her authority, and reversed the IHO's decision that M. had been denied a FAPE.  (Id. ¶¶ 24, 27.)

       M.B. filed suit seeking review of the SRO's decision on May 13, 2014.  On April 8, 2015, M.B. filed the instant motion seeking to supplement the administrative record upon which the Court will decide this case with two additional letters and an affidavit from healthcare providers who have previously treated M., claiming that, without these documents, the administrative record is deficient.[1]  (See Docket Entry Nos. 29-30.)

## DISCUSSION

       The IDEA provides that, in an action brought to review an SRO's determination of whether a student has been denied a FAPE, the district court shall: (i) receive the records of the administrative proceedings; (ii) hear additional evidence at the request of a party; and (iii) base its decision on the preponderance of the evidence, granting such relief as it deems appropriate.  See 20 U.S.C. § 1415(i)(2)(c); see also Eschenasy v. New York City Dept. of Educ., 604 F. Supp. 2d 639, 646 (S.D.N.Y. 2009).  "The taking of additional evidence is a mater

---

[1]    M.B. seeks to supplement the record with: (1) a letter from Dr. Vipul Kothari, M's pediatrician since birth (see Docket Entry No. 29-1, Affidavit of M.B. ("M.B. Aff."), ¶¶ 12-13 & Ex. A ("Kothari Letter"); (2) a letter from Dr. Julia Holtman, a pediatric neurologist (see M.B. Aff. ¶ 14 & Ex. B ("Holtman Letter"); and (3) an affidavit from Dr. Ellen Godwin, a pediatric clinical specialist, which has not yet been created.  (See M.B. Aff. ¶¶ 15, 27.)  On October 13, 2015, M.B. proffered an updated letter from Dr. Godwin.  (See Docket Entry No. 39.)

. . . left to the discretion of the trial court." See, e.g., G.B. ex rel N.B. v. Tuxedo Union Free School District, 751 F. Supp. 2d 552, 555 n.1 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).  While the Second Circuit has yet to address the standard for admitting additional evidence in an IDEA case, courts within this district have adopted the approach articulated by the First Circuit in Town of Burlington v. Dept. of Educ. for Mass., 736 F.2d 773 (1st Cir. 1984).  See Eschenasy, 604 F. Supp. 2d at 649.  In Burlington, the First Circuit held that "the administrative record should be the main source of evidence with limited additions," but declined to adopt a rigid rule unduly limiting the reviewing court's discretion.  Eschenasy, 604 F. Supp. 2d at 649 (citing Burlington, 736 F.2d at 790-91).  Rather, the First Circuit adopted a rebuttable presumption prohibiting additional evidence that was not presented during the administrative proceedings below.  Id., see also Burlington, 736 F.2d at 791.  In applying this standard, a court is to "weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources."  Burlington, 736 F.2d at 791.

"Additional" evidence has been characterized by courts within this Circuit as "supplemental," and therefore such evidence must be "relevant, non-cumulative, and useful." See Eschenasy, 604 F. Supp. 2d at 649 (internal quotation marks and citation omitted); see also Genn v. New Haven Board of Education, No. 3:12CV00704-CSH, 2015 WL 1064766, at *3-4 (D. Conn. Mar. 11, 2015).  In deciding whether to admit additional evidence, a court must "be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo."  Burlington, 736 F.2d at 791.  Indeed, courts have recognized that a "lenient standard for additional evidence would have the consequence of making the whole IDEA

process more time consuming, as parties scrambled to use the federal court proceeding to patch up holes in their administrative case." Genn, 2015 WL 1064766, at *4 (internal quotation marks and citations omitted). "The party seeking to supplement the record bears the burden of establishing that the additional evidence is probative of the issues before the court, and must also explain why the evidence was not presented at the administrative level." Id.

Here, M.B. has failed to demonstrate the relevance of the supplemental evidence that she seeks to have admitted, and her explanation for failing to tender it earlier – that no one else had requested medical testimony at the hearing and M.B. thought the letters she had submitted were sufficient[2] – does not justify a belated exercise in filling perceived gaps in the administrative record.  The Kothari and Holtman Letters both recommend that, due to her intellectual and motor impairments, M. be placed at a specialized school.  (See Kothari Letter, Holtman Letter.)  As the DOE points out, however, neither of the letters indicates whether the opinions expressed therein actually pertain to the 2013-14 school year at issue, making it apparent "from the face of each letter that [the] proffered evidence lacks relevance and probative value to the present case."  (See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Admit Additional Evidence, Docket Entry No. 33, at p.10; see also Kothari Letter, Holtman Letter.)  Indeed, these letters post-date both the IHO's October 2013 decision and the SRO's February 2014 decision.  Furthermore, neither letter includes any information with respect to the writer's medical qualifications, the source of the writer's knowledge of, or familiarity with, M., or the basis of the writer's recommendation with respect to M.'s placement in a specialized school.  Similarly, the affidavit of Dr. Godwin has yet to be created, making it

---

[2]   In her affidavit, M.B. states that "[a]t the hearing, no one asked for the doctor's opinion or testimony.  I submitted letters and thought that was enough."  (See M.B. Aff. ¶ 22.)

impossible for the Court to ascertain whether it will ultimately be of any relevance to this case. (See M.B. Aff. ¶ 27.) The letter from Dr. Godwin that M.B. has proffered speaks as of its August 20, 2015, date about perceived shortcomings of the public school program and argues for different features and a different setting, asserting that the Viscardi School would be the "best environment" for M. (See Docket Entry No. 39.)

    Although M.B. argues that these documents are needed to fill alleged "gaps" in the administrative record pertaining to M.'s medical condition, she concedes that the record contains letters from a physical therapist who treated M., as well as a letter from Dr. Godwin.[3] (See M.B. Aff. ¶¶ 15-16.) She also concedes that, at the Committee on Special Education meetings convened to formulate an IEP for M, she "presented letters of . . . doctors for M, confirming that she required a specialized school." (Id. ¶ 17.) M.B. further asserts that admitting this additional evidence would not prejudice the DOE because "the District should have had and did possess evidence of M's physical condition." (See Plaintiff's Memorandum of Law, Docket Entry No. 30, at p.11) (emphasis supplied). Thus, even if M.B. had properly demonstrated the relevance of the proposed supplemental evidence, it is unclear how such evidence would not be inappropriately cumulative at this point.[4]

---

[3]  Dr. Godwin's letter, dated April 23, 2013, includes information regarding M's physical limitations, possible emotional repercussions of M being improperly placed in a community school, and Dr. Godwin's opinion that it would be appropriate to place M. in a specialized school environment. (See Administrative Record, Pl. Ex. E-1.) M.B. has offered no explanation of how Dr. Godwin's "forthcoming" affidavit would not be duplicative of this letter, and the August 20, 2015, letter is not materially different from the 2013 letter. It proffers no additional detail concerning M.'s condition or needs in 2013.

[4]  Furthermore, the administrative record contains a "Psychoeducational Evaluation Report" prepared by school psychologist Kristin Koziel, dated August 4, 2013, that contains an in-depth assessment of M's cognitive and academic abilities, and that also notes her limited motor skills, physical disabilities and need for appropriate

Furthermore, M.B. does not claim that Drs. Kothari and Holtman were unavailable to testify at the hearing before the IHO, where they could have been cross-examined, or even that they were unable to provide these letters at an earlier date. (See generally M.B. Aff.) Nor does she allege that the opinions of these doctors were improperly excluded from the administrative proceedings at any time. See, e.g., Genn 2015 WL 1064766, at *1 (noting that if the IHO had "erred in excluding evidence, supplementation of the record with relevant evidence would be warranted."). Although M.B. notes her belief that Dr. Godwin was not available to testify at the hearing before the IHO (M.B. Aff. ¶ 22), she provides no further explanation as to why Dr. Godwin was unable to appear and does not even attempt to explain why she did not take the alternative step of proffering an affidavit from Dr. Godwin at that time. By failing to demonstrate both the relevance of the evidence to the instant appeal and that she was unable to tender the evidence during the administrative proceeding, M.B. has not demonstrated a sufficient reason for supplementation of the record and has fallen short of rebutting the presumption against admission of supplemental evidence.

---

support. (See Administrative Record, Def. Ex. 14.) The presence of this report in the record thus severely undercuts M.B.'s argument that the record contains gaps with respect to M's medical condition.

CONCLUSION

For the foregoing reasons, Plaintiff M.B.'s motion to admit additional evidence is denied.  This Memorandum Opinion and Order resolves Docket Entry Numbers 29 and 41.

The parties are directed to submit a proposed briefing schedule for summary judgment motion practice.  The conference currently scheduled for October 29, 2015, is adjourned to a control date of **January 15, 2016, at 10:00 a.m.**

SO ORDERED.

Dated: New York, New York
       October 27, 2015

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge