UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

M.B., individually and on behalf of her minor
child, M.,

        Plaintiff,

   -v-                                          No.  14 CV 3455-LTS

THE NEW YORK CITY DEPARTMENT
OF EDUCATION,

        Defendant.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiff M.B., the mother of M., a child with cerebral palsy, brought this case individually and on behalf of M. under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. (the "IDEA"), as an appeal from an administrative determination finding that Defendant, the New York City Department of Education (the "DOE"), had provided M. with a free and appropriate public education (a "FAPE") as required by the IDEA.  This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(2)(A).

        Plaintiff sought placement of M. in a State-approved specialized school and, when M. was not placed in that school, filed a due process complaint with the DOE.  Following an administrative hearing, an Impartial Hearing Officer ("IHO") found that the DOE had denied M. a FAPE and ordered that M. be placed in a specialized school.  The DOE petitioned for further review by a State Review Officer ("SRO") of the New York State Education Department's Office of State Review, and the SRO reversed the IHO's decision, finding that the DOE did provide M. with a FAPE and denying Plaintiff's requested placement.  Plaintiff

subsequently brought this case seeking review and reversal of the SRO's determination.

The parties have cross-moved for summary judgment.  (See docket entries no. 46 & 49.)  Plaintiff seeks a declaration that the DOE denied M. a FAPE, and an order requiring the DOE to place M. in a State-approved specialized school, the Henry Viscardi School.  Defendant seeks affirmance of the SRO's decision and dismissal of the Complaint.  The Court has reviewed thoroughly all of the parties' submissions, including the administrative record, and has considered the parties' presentations at oral argument and in supplemental briefing thereafter.  For the reasons set forth below, Plaintiff's motion is denied, Defendant's motion is granted, and the decision of the SRO is affirmed.

BACKGROUND

The IDEA's Statutory Framework

The IDEA requires all states receiving federal funds "to provide 'all children with disabilities' a 'free appropriate public education.'"  Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007) (quoting IDEA, 20 U.S.C. § 1400(d)(1)(A)).  The parties do not dispute that M., who has been diagnosed with cerebral palsy, is a child with a disability.  The IDEA requires that, for each child with a disability, like M., the appropriate state or local educational agency must develop an "individualized education program" ("IEP").  20 U.S.C. § 1414(d).  In New York, IEPs are developed by local "Committees on Special Education" ("CSEs") in conjunction with the parents of the disabled student.  N.Y. Educ. L. § 4402(1)(b)(1).

Parents have a right under the IDEA to present a complaint regarding the identification, evaluation, or placement of their child through the IEP process.  20 U.S.C. § 1415(b)(6)(A).  Parents who disagree with the IEP developed by the CSE have a right under

the IDEA to an "impartial due process hearing" before an IHO.  Id. § 1415(f)(1)(A); N.Y. Educ.

L. § 4404(1)(a).  The decision of the IHO may be appealed by either party to an SRO, who

conducts an independent review of the factual findings and decision of the IHO.  20 U.S.C.

§ 1415(g); N.Y. Educ. L. § 4404(2).  Either party may then challenge the SRO's decision in a

federal district court, which is empowered by the IDEA to "receive the records of the

administrative proceedings," to "hear additional evidence," and to "grant such relief as the court

determines is appropriate" based on "the preponderance of the evidence" presented.  20 U.S.C.

§ 1415(i)(2)(C); see also N.Y. Educ. L. § 4404(3).

The Factual Record

The following summary of facts relevant to the instant motion practice is drawn

primarily from the administrative record.

M. is a student with cerebral palsy who was born in 2005.  (IHO Ex. 11, at 1, 2.)

M. faces both physical and cognitive challenges in school.  She navigates her school using a

walker and a wheelchair.  (IHO Ex. 11, at 2; Ex. 14, at 1.)  In the school year before the one at

issue in this case (the 2012-13 school year), M. was in second grade, and had been placed in an

integrated co-teaching ("ICT") class.  (Tr.[1] 32-33, 82, 149-50.)  An ICT class includes children

with disabilities as well as typically developing children and is co-taught by a general education

teacher and a special education teacher.  (Id.)

On May 2, 2013, M.'s CSE met to develop an IEP for the 2013-14 school year.

(IHO Ex. 10, at 1, 13-14.)  The May CSE recommended that M. continue in an ICT classroom

---

[1]         Citations to "Tr." refer to the transcript of the IHO hearings conducted on
September 3, 2013, and October 7, 2013.

for her general education, and that M. have the services of a full-time, 1:1 paraprofessional as well as additional physical and speech therapy sessions and counseling.  (SRO Dec.[2], at 3.)

In a letter dated May 2, 2013, M.'s parents requested an updated evaluation and requested that the CSE "consider another placement" for M.  (IHO Ex. 13.)  M.'s parents provided their consent for the DOE to evaluate M., and an evaluation was conducted over three dates in May 2013.  (IHO Ex. 14 & 15.)

On June 20, 2013, the CSE reconvened to consider the results of the May evaluation.  (SRO Dec. at 3.)  The June CSE modified M.'s IEP, recommending a "12:1:1 classroom" (that is, twelve students to one teacher and one paraprofessional), and specified that M.'s 1:1 paraprofessional should assist with mobility needs.  (IHO Ex. 11, at 8-9.)  The June CSE also modified aspects of M.'s IEP relating to supplementary services and programs that M. would receive.  (See generally and compare IHO Ex. 11 (June IEP) with IHO Ex. 10 (May IEP).)  The June CSE noted parental concerns about M.'s ability to navigate the school building with her walker, and the parents' concern that M. required a "full time special education school." (IHO Ex. 11 at 2-3.)

The parents submitted a due process complaint dated July 10, 2013, to the DOE, alleging, based on the June IEP, that the DOE failed to offer M. a FAPE for the 2013-14 school year.  (IHO Ex. 1, at 1.)  The due process complaint asserted generally that the June IEP "contains multiple procedural and substantive errors," and specifically asserted that: (1) "the CSE did not follow proper procedures in convening the meeting," (2) "the CSE was invalidly composed," (3) "the goals and objectives [in the IEP] do not appropriately address this student's

---

[2]        Citations to "SRO Dec." refer to the February 12, 2014, decision of State Review Officer Justyn P. Bates.  Citations to "IHO Dec." refer to the October 30, 2013, decision of Impartial Hearing Officer Theresa Joyner.

special education needs," (4) "the [CSE] team did not review appropriate documentation in making its recommendation," and (5) "the IEP . . . fails to reflect the reports that the parents provided to the school." (IHO Ex. 1, at 1-2.) The due process complaint alleged that the parents informed the CSE that M. had been accepted at the Henry Viscardi School, but that the district psychologist "refused to consider this as an option." (IHO Ex. 1, at 2.) The due process complaint requested that M. be placed at the Henry Viscardi School or, in the alternative, that the DOE convene a third IEP meeting, or provide a "P-1 Letter" permitting M. to be funded at an approved special education school. (IHO Ex. 1, at 2-3.)

The IHO convened a hearing on the due process complaint on September 3, 2013, and heard two days of testimony, concluding on October 7, 2013. (SRO Dec., at 6.) At the hearing, M.B. testified that M.'s doctor recommended that M. use her walker more frequently, but that M. struggled using the walker at school. (Tr. 148-49.) M.B. also testified that M. was sometimes unable to join other students at recess and had limited ability to use the cafeteria, due to safety concerns. (Tr. 150-51.) M. frequently uses a wheelchair when in school. (Tr. 83-84.)

The IHO issued a 10-page decision on October 30, 2013, finding that the DOE failed to offer M. a FAPE for the 2013-14 school year for several reasons. First, the IHO noted that the June 2013 IEP carried over several goals from the 2012-13 school year's IEP, indicating that M. was not progressing. (IHO Dec., at 7-10.) Second, the IHO found that the DOE "refused to consider placement at another school." (IHO Dec., at 10.) Third, the IHO found that the DOE failed to establish that a 12:1:1 placement was appropriate for M., and the IHO concluded that M. would be improperly limited by not being placed in a barrier-free setting with full access to the school's cafeteria, swimming pool, and recess. (IHO Dec., at 10.) The IHO also concluded that the parents had demonstrated that M. required a 12-month school year program to prevent

regression.  (IHO Dec., at 10.)  The IHO therefore ordered the DOE to place M. at the Henry

Viscardi School for the remainder of the 2013-14 school year.  (IHO Dec., at 10.)

   The DOE appealed to the SRO, who reversed the IHO's decision.  The SRO set

forth the applicable standards for the determination of whether a student has been provided a

FAPE, but erroneously cited the so-called Burlington/Carter test[3] for determining whether a

parent should be reimbursed for the cost of private tuition.  (SRO Dec., at 9.)  The parties agree

that it was error for the SRO to invoke the Burlington/Carter standard, because M. was not

unilaterally placed in a private school such that her tuition could be reimbursed, but disagree as

to the significance of the SRO's error.

   The SRO began his legal analysis with findings that the IHO had exceeded her

jurisdiction by addressing issues that had not been raised in the due process complaint.

Specifically, the SRO found that the due process complaint did not raise the arguments that: (1)

M. required a 12-month school year program; and (2) M. required a barrier-free setting.  (SRO

Dec., at 10.)  The SRO also held that the parents had improperly raised other new issues at the

SRO level that had not been addressed by the IHO, including whether the parents had been

denied an opportunity to participate meaningfully in the CSE.  (SRO Dec., at 11.)  The SRO

found that the DOE had not agreed to expand the issues beyond those enumerated in the due

process complaint, and therefore held that the IHO had exceeded her jurisdiction in addressing

the 12-month program and physical barrier issues, and that the SRO had no jurisdiction to

consider the parents' additional new arguments.

   The SRO then went on to consider in detail the June 2013 CSE and resulting IEP,

---

  [3]  See Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 16 (1993); Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369-370 (1985).

including the recommended 12:1:1 placement.  (SRO Dec., at 13-21.)  The SRO concluded that

the CSE had met its obligation to consider the results of M.'s evaluation and the concerns of the

parents in developing M.'s IEP, and that the DOE had therefore demonstrated that it had

considered all of the available information appropriately.  (SRO Dec., at 16.)  The SRO also

concluded that the record before the IHO was insufficient to demonstrate that the annual goals

outlined in the IEP were inappropriate, despite the fact that some of those goals were carried

over from prior years because, the SRO found, only one annual goal was actually carried over in

identical form, and that goal had not been achieved in the prior year.  (SRO Dec. at 18.)  Finally,

the SRO found that the hearing record demonstrated that the 12:1:1 placement in the IEP was

appropriate to meet M.'s needs, based on the testimony of the school psychologist at the

impartial hearing and the evidence before the CSE.  (SRO Dec. at 19-21.)  The SRO therefore

concluded that the DOE appropriately placed M. in a 12:1:1 setting without considering an

alternate placement.  (SRO Dec. at 21.)  Given this conclusion, the SRO did not proceed to

consider the factors in the <u>Burlington/Carter</u> test.

        M.B., on behalf of M., brought this case to appeal the decision of the SRO.  Both

parties now move for summary judgment.


<u>DISCUSSION</u>

        The stated purpose of the IDEA is "to ensure that all children with disabilities

have available to them a free appropriate public education."  20 U.S.C. § 1400(d)(1)(A)

(LexisNexis 2006).  "States have an affirmative obligation to provide a basic floor of opportunity

for all children with disabilities," which includes "an education 'likely to produce progress, not

regression,' and one that 'affords the student with an opportunity greater than mere trivial

advancement.'"  T.K. v. N.Y.C. Dep't of Educ., 810 F.3d 869, 875 (2d Cir. 2016) (quoting M.O. v. N.Y.C. Dep't of Educ., 793 F.3d 236, 239 (2d Cir. 2015) (internal modifications omitted)).

The "centerpiece" of the IDEA is the IEP.  Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 197 (2d Cir. 2002).  In order to ensure that a child receives a FAPE, the IEP "must include the child's present level of performance, goals for her improvement, and a plan about how to achieve that improvement."  T.K., 810 F.3d at 875.  Further, it must "be reasonably calculated to enable the child to receive educational benefits."  Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 363 (2d Cir. 2006) (internal quotation marks omitted).

It is well established that "the role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed."  Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007) (internal quotation marks omitted).  A court reviewing the decisions of an IHO and SRO "must engage in an independent review of the administrative record and make a determination based on a 'preponderance of the evidence.'"  Id. (citation omitted).  This review, however, "is by no means an invitation to courts to substitute their own notions of sound educational policy for those of the school authorities they review."  R.C. ex rel. M.C. v. Byram Hills Sch. Dist., 906 F. Supp. 2d 256, 267 (S.D.N.Y. 2012) (citation omitted). "[D]eterminations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures."  M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 244 (2d Cir. 2012).  Additionally, "the district court should afford more deference when its review is based entirely on the same evidence as that before the SRO than when the district court has before it additional evidence that was not considered by the state agency."  Id.

The district court need not, however, defer to a determination that is not

"grounded in thorough and logical reasoning," and its review should involve "the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." Id.  When the IHO and the SRO reach conflicting decisions, the Second Circuit has instructed that courts are generally to "defer to the final decision of the state authorities" – i.e., to the decision of the SRO.  R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 189 (2d Cir. 2013) (citation and internal punctuation omitted).  In R.E., the Second Circuit held that "a court must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead."  Id.

Jurisdictional Issues

The parent's "failure to raise an argument in a due process complaint precludes later review of that argument."  B.M. v. N.Y.C. Dep't of Educ., 12 CV 3247, 2013 WL 1972144 at *6 n.2 (S.D.N.Y. May 14, 2013).  The Court concurs in the SRO's determination that the IHO considered, and based her decision upon, matters outside of the scope of the due process complaint.  The due process complaint did not assert that M. required a 12-month program. Plaintiff, who bears the burden of establishing subject matter jurisdiction, asserts in her briefing that the due process complaint's reference to a "full time special education school" was a request for a 12-month program, but has offered neither factual nor precedential support for the proposition that the term "full time" is commonly understood in this context to refer to a 12-month program.  See and compare R.C. v. Byram Hills Sch. Dist., 906 F. Supp. 2d 256, 261 & 263 (S.D.N.Y. 2012) (noting that parents sought a "full-time special education program" that

would commence in "Fall 2008").  Nor does the IHO Decision contain any argument or reasoning supporting Plaintiff's proposition.  By contrast, the SRO, who has considerable experience in dealing with matters of education policy, provided several paragraphs of analysis of the record and concluded that there was no basis for Plaintiff's claim that the issue of a 12-month program had been raised prior to the impartial hearing.

Similarly, although the due process complaint makes general references to the CSE's failure to consider certain documentation or reports provided by the parents, the IHO offers no support for her conclusion that the issue of whether M. required a barrier-free environment was raised with sufficient particularity in the due process complaint.  Nor is the parents' argument that the due process complaint may incorporate arguments by reference to letters and other documentation availing; both the statute and case law are clear that issues to be addressed must be raised <u>in</u> the due process complaint itself.  20 U.S.C. § 1415(f)(3)(B); <u>R.C.</u>, 906 F. Supp. 2d at 269 ("Plaintiffs did not allege these procedural defects in their due process complaint. . . . Accordingly, these alleged deficiencies were not properly raised in this proceeding.").  The SRO undertook a thorough review of the record before the two CSEs and the content of the due process complaint, and found that the parents did not specifically raise concerns about access and a barrier-free environment at any time prior to the impartial hearing.

The SRO's well-reasoned decision is consistent with the administrative record and merits deference.  The Court concludes that Plaintiff has not shown that the IHO acted within her authority when addressing the question of whether the DOE denied M. a FAPE by failing to consider a 12-month program and/or by failing to provide a fully barrier-free environment.  <u>See</u> <u>R.E.</u>, 694 F.3d at 188 ("[P]arents are precluded in later proceedings from raising additional defects in the IEP that they should have raised from the outset . . . .").

Accordingly, because Plaintiff failed to exhaust administrative remedies as to either issue by failing to raise them below, this Court lacks jurisdiction to consider them in this review proceeding.[4]

Adequacy of the CSE Process

Plaintiff challenges the adequacy of the CSE process, arguing that the CSE failed to consider and follow the recommendations contained in evaluative material the parents proffered at the CSE.  In developing an IEP, a CSE is required to "review existing evaluation data on the child, including (i) evaluations and information provided by the parents of the child; (ii) current classroom-based, local, or state assessments, and classroom-based observations; and (iii) observations by teachers and related service providers."  20 U.S.C. § 1414(c)(1)(A).  The CSE must consider "the results of the initial evaluation or most recent evaluation of the child." Id. § 1414(d)(3)(A)(iii). New York state regulations also provide that the CSE "must consider the results of the initial or most recent evaluation" when developing an IEP.  N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(d)(2)).  However, a CSE is not required to "review every single item of data available."  FB v. N.Y.C. Dep't of Educ., 923 F. Supp. 2d 570, 582 (S.D.N.Y. 2013).

The gravamen of the parents' objection here is that the CSE should have considered and deferred to the recommendations of certain medical personnel.  Such an objection is not supported by precedent, as the SRO correctly concluded in a lengthy and well-reasoned section of his decision, which noted that the CSE did consider several evaluations of

---

[4]     Plaintiff's Complaint asserts claims for relief under the IDEA, and under the Rehabilitation Act of 1973, 29 U.S.C. § 794.  Plaintiff's Rehabilitation Act claim (which, in her Notice of her cross-motion for summary judgment, is paired with a reference to the Americans with Disabilities Act) relates solely to her claim that the District failed to properly place M. in a fully barrier-free school.  (See docket entry no. 46.)  Because this issue was not properly raised below, Plaintiff may not assert this claim for the first time here.

M., including the evaluation conducted at the parents' request after the May 2013 IEP.  See SRO

Dec., at 13-16; T.G. v. N.Y.C. Dep't of Educ., 973 F. Supp. 2d 320, 340 (S.D.N.Y. 2013)

("While the CSE is required to consider certain evaluative information from the child's parents

and teachers (or related service providers), the IDEA does not explicitly require that it consider

all potentially relevant evaluations from the child's doctor." (internal quotation marks omitted).)

Nor was the CSE required to defer to the recommendations and evaluations proffered by the

parents.  S.W. v. N.Y.C. Dep't of Educ., 92 F. Supp. 3d 143, 158 (S.D.N.Y. 2015)

("Consideration does not require . . . that the CSE accord the private evaluation any particular

weight.").  The Court therefore concludes that there were no procedural violations by the CSE

that resulted in the denial of a FAPE to M.

Adequacy of the IEP

Plaintiff next challenges the annual goals outlined in the IEP, arguing that they

were improperly recycled from prior years.  The Court concludes, as did the SRO in a lengthy

and well-reasoned portion of his opinion, that the IEP's annual goals for M. were adequate.

Plaintiff's challenge is ultimately based solely on the inclusion of one goal in the June 2013 IEP

that was identical to a goal from the prior year's IEP.  As the SRO concluded, the IEP was

properly grounded in evidence before the CSE, and the goals in the IEP were further supported

by testimony before the IHO that justified the repetition of one physical therapy goal.  (See SRO

Dec., at 17-19; Tr. 54-55.)

Adequacy of the 12:1:1 Placement

In his decision, the SRO concluded that the District had put forward sufficient

evidence to demonstrate that M.'s placement in a 12:1:1 classroom was reasonably calculated for

educational benefit.  The District did so primarily (though not exclusively) through the testimony

of the school psychologist, who discussed the evidence before the CSE and the conclusions the CSE reached.  (See SRO Dec., at 19-21.)  In so holding, the SRO reversed the finding of the IHO, who had noted the absence of "teacher testimony" to support the 12:1:1 placement and found that the District had not demonstrated why the 12:1:1 placement was appropriate for M. (IHO Dec., at 10.)  The Court concludes that the SRO's more thoroughly reasoned and detailed opinion is deserving of significant deference, and adopts the SRO's conclusions.  Neither the IHO nor the Plaintiff put forward case law or argument as to why it was necessary for the District to present testimony specifically from a teacher.  The school psychologist who testified was present at the CSE meetings and was qualified to provide an explanation of how the CSE reached its decision.

Plaintiff also argues that she is entitled to relief because the District had an obligation to demonstrate that it had the ability to implement the IEP through the recommended placement.  This argument is unavailing, as it is based on a misreading of a Second Circuit decision.  In M.O. v. New York City Department of Education, 793 F.3d 236 (2d Cir. 2015), the Second Circuit held that an IDEA plaintiff could challenge "the capacity" of a placement to meet the requirements of an IEP where "the proposed school . . . lacks the services required by the IEP."  Id. at 244.  However, a plaintiff cannot simply speculate that an IEP will not be properly implemented, but must instead demonstrate that the placement school "cannot satisfy the IEP's requirements."  Id. (quoting T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 420 (2d Cir. 2009)).  Here, Plaintiff does not allege that the placement school did not have the ability to satisfy the IEP; instead, she seeks to require the District to prove in advance that it will properly implement the IEP.  M.O. does not require such proof.  Cf. id. ("[I]t is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's

mandates.").  Challenges to the substantive adequacy of the IEP (e.g., arguments that a class size will be too large) "must be assessed by reference to the written plan itself, and [do] not trigger a duty on the part of the school district to provide evidence regarding [the particular placement's] . . . adequacy."  M.O., 793 F.3d at 245.

Relatedly, Plaintiff argues that the CSE was required to consider the specific proposed placement at Henry Viscardi School as an alternative to a public school placement even if the CSE had concluded that the public school placement was appropriate given the requirements of the IEP.  Plaintiff argues that this requirement arises in part as a prophylactic against predetermination.  Under the established interpretation of the IDEA's requirements in this Circuit, however, the CSE was not required to consider a specialized school placement once it had determined that a public school placement was appropriate.

Plaintiff relies primarily on E.H. v. New York City Department of Education, No. 15 CV 3535, 2016 WL 631338 (S.D.N.Y. Feb. 16, 2016), for support of this argument.  In E.H., the court held that a CSE could not refuse to consider a parent's argument that their child required a more restrictive student/teacher ratio than the District was able to provide.  Id. at *9. E.H. did not, however, involve the precise challenge Plaintiffs raise here: whether the CSE was required to consider additional placement options after concluding that the public placement was appropriate.  Moreover, unlike in E.H., the record does not reflect the CSE's refusal to consider the parents' contentions that a placement, such as the Viscardi School, with students with like disabilities in a more restrictive setting, was necessary.  The IHO report confirms that the District's evidence included testimony that the CSE determined that a more restrictive setting with more intensive instruction in a D75 School was too restrictive and inappropriate, and affirmatively concluded that a 12:1:1 ratio in a community school was appropriate for reasons

articulated on the record.  (See IHO Decision, at 3.)  Courts in this Circuit have uniformly held that the CSE is not required to consider non-public placements after it determines that a public placement is available that has the ability to implement the CSE.  See T.G. v. N.Y.C. Dep't of Educ., 973 F. Supp. 2d 320, 341 (S.D.N.Y. 2013) ("Once the CSE determined that an 8:1:1 classroom was appropriate for R.P., it had identified the least restrictive environment that could meet R.P.'s needs and did not need to inquire into nonpublic programs."); A.D. v. N.Y.C. Dep't of Educ., No. 12 CV 2673, 2013 WL 1155570, at *8 (S.D.N.Y. Mar. 19, 2013) ("[O]nce the CSE determined that a 6:1:1 classroom would be appropriate for the Student, it had identified the least restrictive environment that could meet the Student's needs and did not need to inquire into more restrictive options such as nonpublic programs.").  Furthermore, it is undisputed that the CSE reviewed the evaluative input of the Viscardi School and that the re-evaluation of M. was undertaken because the parents had requested placement in the more restrictive setting of the Viscardi School.  On this record, there is no basis for the parents' contention that the public school placement was indicative of predetermination that deprived the parents of a meaningful opportunity to collaborate in the deliberation process.  Plaintiff's arguments as to predetermination or the inadequacy of the CSE's consideration of the Henry Viscardi School are therefore unavailing.

Because the District provided a FAPE, it is unnecessary for the Court to address the parties' arguments regarding the SRO's invocation of the Burlington/Carter test.

CONCLUSION

For the foregoing reasons, and for substantially the reasons stated in the well-reasoned and thorough decision of the SRO, the Court concludes that the District demonstrated

the adequacy of the IEP, the CSE, and the proposed placement for M. in a 12:1:1 public school environment, and did not deny M. a FAPE during the 2013-14 school year.  Accordingly, the District's motion for summary judgment is granted, and the Plaintiff's motion for summary judgment is denied.  This Memorandum Opinion and Order resolves docket entry nos. 46 and 49.

        The Clerk of Court is respectfully requested to enter judgment for Defendants and close this case.

        SO ORDERED.

Dated: New York, New York
      January 25, 2017

                       /s/ Laura Taylor Swain    
                      LAURA TAYLOR SWAIN
                      United States District Judge